**UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ADMIRAL CONSTRUCTION &
MAINTENANCE, INC.,

                Plaintiff,

                                                  CASE NO. 10-13651

v.

                                                  HON. MARIANNE O. BATTANI

VOLVO TRUCKS NORTH AMERICA,
INC., EATON CORP., AND CUMMINS,
INC.,

                Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

       This matter is before the Court on Defendant Cummins, Inc.'s Motion for

Summary Judgment (Doc. 23) and Defendant Eaton Corp.'s Motion for Summary

Judgment (Doc. 24).   Plaintiff Admiral Construction & Maintenance Inc. sued

Defendants under breach of warranty theories for damages arising from an allegedly

defective semi-truck.   In their Rule 56 motions for summary judgment, Defendants'

argue Plaintiff has no evidence that the truck is defective.  Plaintiff maintains there is a

fact question as to whether its truck is defective and whether Defendants' repair efforts

were reasonable.  For the reasons that follow, the Court **GRANTS** each of Defendants'

motions.

**I.**       **STATEMENT OF FACTS**

       On June 12, 2008, Tadeusz Frontczak, owner of Plaintiff Admiral Construction &

Maintenance, Inc. (a one-man trucking company), purchased a 2008 Volvo semi-truck

2:10-cv-13651-MOB-MJH   Doc # 34   Filed 10/06/11   Pg 2 of 13   Pg ID 648

for $121,809.80 from non-party VIP Truck Center.  (Doc. 28 Ex. A).  Plaintiff uses the truck in its trucking business.

Defendant Cummins Inc. manufactured the turbo-diesel engine in Plaintiff's truck. Cummins expressly warrantied the engine for 24-months or 250,000-miles, whichever came first.  (Doc. 23 Ex. 1).  The express limited warranty covered "any failures of the Engine which result, under normal use and service, from defects in material or factory workmanship."  (Id. at 7 of 9).  The warranty contains the following limitations clause:

> **CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**
>
> **THIS WARRANTY AND THE EMISSION WARRANTY SET FORTH HEREINAFTER ARE THE SOLE WARRANTIES MADE BY CUMMINS IN REGARD TO THESE ENGINES. CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(Id. at 8 of 9 (emphasis in original)).

Defendant Eaton Corp. manufactured the transmission in Plaintiff's truck.  (Doc. 24 at 1, ¶2).  The parties dispute whether Eaton expressly warrantied the transmission. Plaintiff says a reference on repair invoice #80442 confirms the existence of such a warranty.  (Doc. 27 Ex. D at 26 of 31).  Eaton says the alleged warranty does not exist because neither party produced it during discovery.  The parties agree, however, that the Eaton transmission is subject to an implied warranty of merchantability.  (Doc. 24 at 5; Doc. 29 at 9).

In July 2008, Plaintiff placed the truck into service.  Between July 2008 and March 2011, Plaintiff drove the truck approximately 320,000 miles.  During this time, Plaintiff repeatedly complained of ongoing engine compartment noise, a rough running

engine, and overheating problems.  Plaintiff explained these symptoms usually occurred when travelling across mountainous terrain and in hot weather.

As a result of Plaintiff's complaints, the truck was out of service for warranty repairs on a number of occasions.  Plaintiff has submitted a summary log describing the nature of these repairs.  (Doc. 28 Ex. C).  The log shows, among other things, that Defendants replaced the truck's transmission, clutch, turbo and fuel injector, repaired certain exhaust leaks, and adjusted the truck's engine valves and fuel pump.  According to the log, the truck was down for repairs at least sixty-four days out of approximately three years.  Plaintiff, however, maintains that it was down for at least three months during the first two years of ownership, explaining that the log does not accurately track how many days the truck was out of service.  (Doc. 28 at 9).  Defendant performed the warranty repairs at no cost to Plaintiff. Plaintiff accepted the truck after each repair and placed it back into service without objection.

Despite these numerous documented repairs, Plaintiff claims the truck remains defective.  When asked to describe the current complaints, Frontczak answered:

> The truck, if you go in the mountains and attempt to changing, the truck is losing power.  It's like make noise, puff, puff.  It's making noise.  Nothing right.  It's like pulling behind 100,000 pounds, not 40,000 pounds.  And if it's like very cold outside, like close to zero, the noise disappears.  If it's like 12, 14 degrees to 32 degrees, then the noise come back.  And if it's 44 degrees outside weather, the truck runs good.

> As soon as it past 60 degrees outside, the truck getting hot, very hot.  If I go over the mountains, the truck got heat like lights.  The exhaust is so hot, everything is so hot.  I'm replacing the EGR valve and it take the thing down.  If I'm going up a hill and pull a load up the hill, I am going to sweat like 5, 10 minutes up the hill or drive slowly to remove the heat from the engine.  It is heating too much and making a noise.  And if you s[t]op, it's like metal, metal noise.  Like next to somebody to truck driver you park it and noise they come over and say, "What's going on?"  And I say, "Nobody know what is going on."

3

. . .

It's like losing power. Just like as soon as it happens like this, the truck losing power. . . . It's not, it's not pulling right. You know what I mean? The mileage, if you see like as soon as something change in the truck, you know what I mean, whatever the change, the average going down. The fuel, everything. I mean, it's like running rough with everything. I mean, you know what I mean? If you push it, it don't want to go.

(Doc. 23 Ex. 2 at 43-45). Plaintiff says Defendants made their last attempt at repair in July 2010 and the truck still has the above-described issues. Notwithstanding these alleged continuing problems, since last bringing the truck to Defendants for service, Plaintiff has driven it an additional 85,000 miles while hauling loads across the country. (Id. at 41).

On August 13, 2010, Plaintiff filed suit against Defendants alleging breach of express and implied warranties. (Doc. 1 Ex. A). Defendants filed separate motions for summary judgment under Rule 56. (Docs. 23; 24). The Court heard oral argument on July 28, 2011. Defendants' motions are now before the Court.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

4

2:10-cv-13651-MOB-MJH   Doc # 34   Filed 10/06/11   Pg 5 of 13   Pg ID 651

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

III.   **ANALYSIS**

A.   **Defendant Eaton's Motion for Summary Judgment**

Plaintiff argues Eaton breached an unidentified express warranty and the implied warranty of merchantability because the truck has had various transmission problems, has been out of service for repairs at least sixteen times, and Eaton has not repaired the transmission defects within a reasonable amount of time. Plaintiff essentially maintains that there is a genuine issue of material fact as to whether the Eaton transmission was "merchantable" under the circumstances presented. The Court disagrees.

5

### 1.   Express Warranty

Eaton is entitled to summary judgment on Plaintiff's express warranty claim because Plaintiff has no evidence that Eaton gave Plaintiff an express warranty on the truck's transmission.   Neither party produced a copy of the alleged warranty in discovery.  Plaintiff's reliance on a portion of invoice #80442 that states, "Eaton supplied transmission per Lon Miller at Eaton" is insufficient to establish that Eaton gave Plaintiff an express warranty.  Absent proof that Eaton expressly warranted the transmission, Plaintiff's breach of express warranty claim fails as a matter of law.

### 2.   Implied Warranty

Plaintiff has failed to carry its burden on the implied warranty claim.   "The warranty of merchantability requires that the goods sold be of average quality within the industry."  Computer Network, Inc. v. AM General Corp., 696 N.W.2d 49, 55 (Mich. Ct. App. 2005) (internal quotation marks omitted) (quoting Guaranteed Constr. Co. v. Gold Bond Products, 395 N.W.2d 332, 335 (Mich. Ct. App. 1986)).  To establish a breach of an implied warranty of merchantability, "a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller."   Id. at 56 (quoting Guaranteed, 395 N.W.2d at 336).  A plaintiff establishes a defect with "proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use." Id.

Plaintiff presents no evidence which shows that Eaton breached the implied warranty of merchantability.  Prior to Eaton replacing the transmission at no cost on September 21, 2009, the repair log shows that Plaintiff complained of transmission noise on only two occasions.  (Doc. 24 Ex. B).  At the time when Eaton replaced the

6

transmission, Plaintiff had driven the truck approximately 128,000 miles.  Plaintiff admits after this one-day repair, it has driven the truck an additional 200,000 miles over two years and has yet to experience a transmission problem.   (Doc. 24 Ex. A. at 75). Although Plaintiff brought the truck in for repairs another fourteen times after the transmission was replaced, it has completely failed to show how a defect in the Eaton transmission caused any of those complaints.   In fact, the log contains no record of transmission complaints subsequent to the September 21 replacement.   Based on these proofs, a reasonable jury could not conclude that the Eaton breached the implied warranty of merchantability.  Accordingly, Eaton is entitled to summary judgment on this claim.

**B.      Defendant Cummins' Motion for Summary Judgment**

Plaintiff argues Cummins breached the express limited warranty and the implied warranty of merchantability because the truck's engine problems that were repaired under the warranties still exist.  It alleges four defects remain uncorrected: abnormal engine noise; rough running engine; engine losing power; and overheating.   Plaintiff also maintains the express limited warranty failed its essential purpose because Cummins did not remedy these defects or perform repairs within a reasonable time.

**1.      Implied Warranty**

With respect to the breach of implied warranty claim, Plaintiff conceded at oral argument that it had waived all implied warranty claims against Cummins under the limitations clause contained in the express warranty. See (Doc. 23 Ex. 1 at 8 of 9). Accordingly, the Court will enter summary judgment in favor of Cummins on the implied warranty claim.

## 2.    Express Warranty

Plaintiff has failed to establish a genuine issue of material fact on its breach of express warranty claim.  To prevail on such a claim, a plaintiff carries the burden of establishing that: (1) the defendant made express warranties relating to the good; (2) the good did not conform to the warranties at the time of sale or within the time period covered by the warranties; (3) the plaintiff notified the defendant of the nonconformity within a reasonable time after the plaintiff discovered or should have discovered the nonconformity; and (4) the nonconformity caused plaintiff damage.  See MICH. COMP. LAWS §§ 440.2313; 440.2607(3).

Plaintiff cannot sustain a breach of express warranty claim because its engine nonconformity proofs are fatally thin.  Plaintiff has driven the Cummins' engine more than 320,000 miles in three years.  During this time, Cummins has replaced and repaired numerous engine parts under warranty, at no cost to Plaintiff.  Plaintiff accepted the truck every time after Cummins performed the necessary repairs.  That Cummins repaired the engine pursuant to an express warranty is not enough to establish a breach of that warranty.  See Ducharme v. A & S RV Center, 321 F.Supp.2d 843, 850-51 (E.D. Mich. 2004) (observing that (1) "the fact that the motor home was previously repaired does not establish a breach of an express warranty," (2) some service on a complex motor vehicle is inevitable, and (3) there is no breach when the manufacturer is willing to repair an existing problem under the warranty), aff'd, No. 04-1224, 127 F.App'x. 204 (6th Cir. May 3, 2005)).

Plaintiff's identification of four broad categories of unrepaired "defects" is uncorroborated and nonspecific.  The engine typically exhibits the complained of

symptoms while hauling loads across mountainous areas in hot weather on long trips to California and the Court notes that Plaintiff has made about ten such trips over three years.  Plaintiff has not named or retained any expert witness to objectively support its claim that an engine defect for which Cummins is responsible caused the engine to emit "abnormal" noise, run "rough," overheat, or "lose power."  Plaintiff's subjective belief that the engine remains defective does not prove as much.  In other words, Plaintiff cannot sustain its burden of establishing nonconformity by simply stating that some unidentified engine defect caused Plaintiff's problems.  It must present sufficient evidence to identify which engine defect caused the alleged nonconformity and substantiate that the defect remains unrepaired. See Gregory v. Cincinnati, Inc., 538 N.W.2d 325, 329 (Mich. 1995) ("A breach of warranty claim tests the fitness of the product and requires that the plaintiff prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains.").

Given the proofs presented, Plaintiff cannot establish that the proximate cause of its current complaints are attributable to a defect in the material and workmanship of the Cummins engine.  A review of Frontczak's deposition testimony highlights the absence of probative causation evidence.  Since Plaintiff has presented no expert testimony on causation, a jury can only rely on Frontczak's complaints and lay opinion that some unidentified engine defect caused Plaintiff's unresolved problems to occur under a particular combination of environmental variables.  At this point, the fact-finder would be speculating on whether the engine has a defect, whether that defect is the source of Plaintiff's current complaints, and whether Cummins was responsible for repairing that defect under the warranty.  Consequently, any causation finding by a jury would be

9

based upon mere speculation or conjecture, which is not permitted under Michigan law. See Vigilant Ins. Co. v. Central Tower, Inc., 2001 WL 822425, *3 (W.D. Mich. May 01, 2001) (citing Chambers v. General Motors Corp., 333 N.W.2d 9, 10 (Mich. Ct. App. 1982) (per curiam)).   Absent sufficient evidence to distinguish the legally significant defect that renders the engine nonconforming, Cummins is entitled to summary judgment on Plaintiff's express warranty claim.

### 3.      Essential Purpose of the Express Warranty

Cummins is also entitled to summary judgment on Plaintiff's claim that the express limited warranty failed its essential purpose.   Under Michigan's enactment of the Uniform Commercial Code, a purchaser is limited to the terms of the seller's written warranty unless the warranty fails of its essential purpose.   MICH. COMP. LAWS § 440.2719(2).   "A warranty fails for its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed, in which event the buyer is entitled to seek remedies under the standard UCC warranty provisions." Severn v. Sperry Corp., 538 N.W.2d 50, 54 (Mich. Ct. App. 1995); Computer Network, Inc., 696 N.W.2d at 55.   The "essential purpose" of a limited repair warranty is to provide the seller the opportunity to provide the buyer with the substantial benefit of its bargain by supplying goods that conform to the sales agreement while limiting the seller's exposure for damages that might otherwise be available.   Kelynack v. Yamaha Motor Corp., USA, 394 N.W.2d 17, 19-20 (Mich. Ct. App. 1986).   Michigan courts have observed that "[w]here a manufacturer or dealer has limited its obligation . . . to repair or replace defective parts, the seller does not have an unlimited time to make the repairs, but rather must repair or replace the parts within a

10

reasonable time." <u>Computer Network, Inc.</u>, 696 N.W.2d at 55 (internal quotation marks and citations omitted).

Plaintiff contends the express warranty failed its essential purpose because Cummins did not repair the engine within a reasonable amount of time and the engine remains defective.  It maintains the truck was down for service at least eighty-five days during the first two years of ownership and this length of time was unreasonable under the circumstances.  Plaintiff also suggests the actual number of days out of service is higher than eighty-five because it did not receive all invoices for the time the truck was down and the truck sat for many days before the initial service ticket was written.

As a threshold matter, Plaintiff has presented no proof that "unanticipated circumstances" prevented Cummins from providing Plaintiff with the agreed-upon remedy set forth in the express limited warranty.   The record indicates that when Plaintiff presented Cummins with a claim under the warranty, Cummins did exactly what it had contracted to do.  <u>See</u> <u>Fire & Ice Mechanical, Inc. v. Bit Mat Products of Michigan</u>, 2007 WL 2962800, *4 (Mich. Ct. App. October 11, 2007) (finding no "unanticipated circumstances" when product repaired under express warranty).   The Court rejects Plaintiff's position that "unanticipated circumstances" exist because Cummins cannot repair four categories of defects.  Each time the engine was repaired under warranty, Plaintiff accepted it and returned the truck to service.  The record contains no objective verification of the allegedly unrepaired engine defects.  Entries in the summary repair log and service invoices relating to engine noise, heat and loss of power simply confirm that Plaintiff subjectively perceived these issues.   Notably, despite these alleged continuing defects, Frontczak admitted that Plaintiff continues to operate the truck and

11

hauls loads for many different companies. (Doc. 23 Ex. 2 at 40-41).  He also admitted that just prior to his deposition, Plaintiff drove the vehicle 3000-3100 miles over the course of five or six days and planned to haul a load the day after the deposition. (Id. at 40, 46).  Clearly, this case does not present a situation in which Plaintiff is unable to use the truck because Cummins cannot repair the truck's engine.

Furthermore, under Computer Network, it is clear that "a plaintiff cannot rely on the aggregate number of repairs to argue that there is a question of fact whether the time for repairs was unreasonable but rather must offer evidence as to each specific repair showing that the time for that repair was unreasonable under the circumstances." Harnden v. Ford Motor Co., 408 F.Supp.2d 315, 321 (E.D. Mich. 2005) (citing Computer Network, Inc., 696 N.W.2d at 55); see also Liberman v Fleetwood Motor Homes of Indiana, 2009 WL 454952 (Mich. Ct. App. February 24, 2009).  Here, Plaintiff merely contends that the aggregate number of days for repair should be considered, but fails to show that the time for the individual repairs was in any way unreasonable. Notwithstanding the clear pronouncement of the law in Computer Network and its progeny, Plaintiff does not isolate each engine repair and explain why that specific repair took an unreasonable amount of time to complete.

In sum, Plaintiff has failed to establish a genuine issue of material fact as to whether the express warranty failed its essential purpose because Plaintiff has not demonstrated the existence of any "unanticipated circumstance" which prevented Plaintiff from enjoying the benefits of the warranty and presents no evidence that the time to perform the individual engine repairs was unreasonable for this specific vehicle. Accordingly, Cummins is entitled to summary judgment on this claim.

**IV.    CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant Cummins' Motion for Summary Judgment (Doc. 23) and Defendant Eaton's Motion for Summary Judgment (Doc. 24).

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATED:  October 6, 2011

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record, electronically.

s/Bernadette M. Thebolt
Case Manager